UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPECTRE AIR CAPITAL, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-0997 |
| | § | |
| CRANE WORLDWIDE LOGISTICS LLC, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Spectre Air Capital, LLC's ("Spectre") motion to remand. Dkt. 6. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion to remand (Dkt. 6) should be DENIED.

**I. BACKGROUND**

This case stems from the international shipment of two aircraft engines. Dkt. 1-1 at 6-7. Spectre entered into a lease with Delta Airlines ("Delta") for the engines and engaged defendant Crane Worldwide Logistics LLC ("Crane") to transport the engines from Tianjin, China to Delta TechOps at Gate 6 of the Hartsfield-Jackson Atlanta Airport ("Atlanta Airport"). *Id.* Upon arrival at the Atlanta Airport, the engines were transferred from the aircraft to a handling agent warehouse, where Crane's subcontractor loaded the engines onto a truck for delivery to Gate 6. *Id.* at 6-7, 105-06. To reach the gate area from the warehouse, the subcontractor briefly traveled along an interstate access road outside the airport premises. Dkt. 10 at 5; 10-2. Delta TechOps twice rerouted the engines from Gate 6 to Gate 4, then again directed the subcontractor back to Gate 6. Dkt. 1-1 at 105-06. Travel between Gates 4 and 6 did not require the subcontractor to leave airport premises. Dkt. 10-5.

The subcontractor attached straps over the tops of the engines to secure tarps during the final trip to Gate 6. Dkt. 1-1 at 105-06. When the engines arrived at Gate 6 the last time, the Delta TechOps personnel noted the straps had damaged the engines. *Id.* at 11. Three days later, Delta rejected the damaged engines and cancelled the leases between Delta and Spectre. *Id.* at 13.

Spectre sued Crane in the 157th District Court of Harris County, Texas for breach of contract, negligence, gross negligence, fraud, and fraud in the inducement. Dkt. 1 Crane removed the case to this court claiming federal jurisdiction over international air carriages. *Id.*; *see* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13038 [hereinafter *Montreal Convention*]. Spectre now moves to remand the case, arguing that this Court lacks jurisdiction because the Montreal Convention is inapplicable. Dkt. 6.

## II. LEGAL STANDARD

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. The party seeking removal bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This statutory right to removal is strictly construed because "removal jurisdiction raises significant federalism concerns." *Id.* Therefore, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

"The district courts shall have original jurisdiction of all civil actions arising under the . . . treaties of the United States." 28 U.S.C. § 1331. The Montreal Convention is a multilateral treaty "that governs the rights and liabilities of . . . carriers in international air transportation," and "preempts state-law causes of action relating to the international carriage of . . . cargo." *Bridgeman v. United Continental Holdings, Inc.*, 552 Fed. App'x. 294, 296 (5th Cir. 2013).

2

## III. ANALYSIS

Spectre argues that the Montreal Convention does not apply because the damage to the engines did not occur during "carriage by air," but instead on the ground at the Atlanta Airport. Dkt. 6. Crane argues the engines were damaged during carriage by air because any alleged damage occurred before final delivery and within the confines of the Atlanta Airport. Dkt. 9 ¶¶ 15, 16.

"The Convention applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward." Montreal Convention art. 1, ¶ 1. A carrier is liable for damage to cargo sustained during "carriage by air." *Id.* art. 18, ¶ 1. Carriage by air is broadly defined as "the period during which the cargo is in the charge of the carrier." *Id.* art. 18, ¶ 3. Carrier as used in the Montreal Convention applies equally to the contracting party and her agent. *See e.g.*, *Samsung Austin Semiconducter, LLC, v. Integrated Airline Servs.*, No. 4:12-CV-688-A, 2013 WL 105380, at *4 (N.D. Tex. Jan. 9, 2013); *Am. Home Assurance Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F. Supp. 2d 261 (S.D.N.Y. 2008). "[C]arriage by air does not extend to any carriage by land . . . performed outside an airport." Montreal Convention art. 18, ¶ 4. Carriage by air is presumed when "such carriage takes place in performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment . . .subject to proof to the contrary." *Id.*

The record shows that the damage to the engines occurred when Crane's subcontractor tightened straps over the top of the engines "on the very last portion of the evening when [the subcontractor] was instructed to go back to Gate 6 from Gate 4." Dkt. 1-1 at 105-06. This occurred on airport premises while in the charge of the carrier, and therefore the damage to the engines was sustained "during the carriage by air," and the Montreal Convention governs liability in this case. Montreal Convention art. 18.

## IV. CONCLUSION

Because the Montreal Convention applies in this case, the court has original jurisdiction over Spectre's claims. Therefore, Spectre's motion to remand (Dkt. 6) is DENIED.

Signed at Houston, Texas on September 30, 2019.

_____
Gray H. Miller
Senior United States District Judge